**Melvin C. HOLT, Petitioner,**

v.

**UNITED STATES of America, Respondent.**

**No. 14240.**

United States Court of Appeals Seventh Circuit.

Feb. 11, 1964.

Rehearing Denied April 14, 1964.

Charles J. McCarthy, Robert L. Bombaugh, Chicago, Ill., for petitioner.

Melvin C. Holt, pro se.

Edward R. Phelps, U. S. Atty., Thomas F. Londrigan, Asst. U. S. Atty., Springfield, Ill., for respondent.

Before DUFFY, SCHNACKENBERG and MAJOR, Circuit Judges.

SCHNACKENBERG, Circuit Judge.

By a petition for writ of error coram nobis, Melvin C. Holt seeks in effect review of two orders of the district court entered July 1, 1963 denying his petitions under 28 U.S.C.A. § 2255 and for a writ of error coram nobis filed on July 1, 1963. In the § 2255 petition he charged he had been deprived of his constitutional rights, in proceedings in that court which took place on October 16, 1961, after he was charged, in case No. 6069, with transporting in interstate commerce forged and counterfeited securities, and in case No. 6054, with escape from jail while held on criminal charges.[1] He prayed

---

1. Petitioner was also charged in case No. 6055 with transportation of a stolen motor vehicle, which was dismissed on

motion of *nolle prosequi* by the government.

that the judgment be vacated and counsel appointed to defend him.

Petitioner had already sought relief by petition for a writ of certiorari which he filed in the United States Supreme Court on August 24, 1962, attacking our orders of May 23 and 29, 1962, denying his motion to appeal in forma pauperis. The granting of relief was there opposed by the United States Solicitor General, who filed a comprehensive brief, which referred to the proceedings in the district court.

In his brief the Solicitor General said that petitioner's principal contention was that his plea of guilty was coerced, because he had an understanding with the assistant United States attorney which amounted to a promise or guarantee of a five-year sentence if he would change his plea. The Solicitor General stated: "This claim is refuted by the record". He proceeded to analyze the charges and the reasons for recommending the denial of certiorari, which followed on March 4, 1963. 372 U.S. 937, 83 S.Ct. 884, 9 L.Ed. 2d 767.

By his petition dated May 21, 1963, Holt prayed for appointment of counsel.

On July 1, 1963, the district court entered an order which found that the petition under § 2255 set up no basis for relief, that the questions raised had been adjudicated, and that petitioner had been afforded counsel at all stages of the proceedings before the court, and denied the petition.

Also on July 1, 1963, the court considered the document signed by petitioner on April 23, 1963, filed July 1, 1963, and entitled "Writ of error coram nobis", which is in the form of a brief, wherein he alleged that on October 16, 1961, when he entered his plea of guilty, he was suffering from mental illness and that, during a sanity hearing held on August 21, 1961, no consideration was given to "facts sufficient to point out the psychopathic condition of petitioner". This document prayed for a reversal of the sentence and judgment entered against petitioner.

Petitioner also alleged in his brief that, in July 1961, he procured an order from the district court for a mental examination and that petitioner's counsel brought to the court's attention Dr. Baumann's summation.

The court thereafter entered an order on July 1, 1963, finding that at all times petitioner was afforded the assistance of competent legal counsel, that psychiatric examination of petitioner, ordered and made prior to the acceptance of his plea of guilty, did not find the petitioner insane, or otherwise so mentally incompetent as to be unable to understand the proceedings against him or properly to assist in his own defense, and hence no hearing was required under 18 U.S.C.A. § 4244; that the court did determine at that time that the petitioner was of sound mind and able to understand the proceedings against him and properly assist in his own defense. The court denied the April 23, 1963 document.

On this appeal petitioner has been represented by attorneys Robert L. Bombaugh and Charles J. McCarthy of the Illinois bar, at this court's designation. They have rendered service of a high quality, for which we express our thanks.

We shall not contribute to the perplexity inherent in the record before us by describing in detail the complicated situation resulting from the various efforts used by petitioner to gain relief in this court. Rather than undertake to justify our jurisdiction to pass upon his contentions, we adopt the suggestion of government counsel in oral argument that our decision be based only on the question of substantive law which petitioner seeks to present, regardless of the method used by him in raising it here. We take this course advisedly, because of the unusual situation before us. Its uniqueness forecloses any citation of our decision here as a precedent in any other case.

1. It is petitioner's contention that the district court erred in accepting his pleas of guilty without first determining that the pleas were made voluntarily, with understanding of the nature of the charges and of the consequences. Reli-

ance is placed upon rule 11 of the Federal Rules of Criminal Procedure, 18 U.S.C.A. rule 11, which provides:

"A defendant may plead not guilty, guilty or, with the consent of the court, *nolo contendere.* The court may refuse to accept a plea of guilty, and shall not accept the plea without first determining that the plea is made voluntarily with understanding of the nature of the charge. \* \* \*"

It is urged that in this case there was a total absence of any inquiry and that there was no determination that the pleas of petitioner were voluntarily entered, with the understanding required by rule 11. His counsel state that the record conclusively demonstrates that petitioner's pleas of guilty were not entered voluntarily and with understanding of the nature of the charges and of the consequences. Reliance is placed in part upon our holding in Shelton v. United States, 7 Cir., 292 F.2d 346 (1961), where, on the facts appearing in that case, we reversed a conviction based upon a plea of guilty, because the record before us failed to show that the district court considered facts *dehors the record* which bore on the merits of petitioner's claim to relief in a proceeding under 28 U.S.C.A. § 2255.

However, in the case at bar, the record indicates to us that the district court did determine that petitioner's pleas of guilty were made voluntarily, with understanding of the nature of the charges and of the consequences of his pleas.

There was a substantial compliance with rule 11. At the arraignment on October 16, 1961, defense counsel asked leave to withdraw the plea of not guilty in both cases and enter a plea of guilty to each charge (Nos. 6054 and 6069).

The court asked petitioner if that was his desire and he answered "Yes, sir". The court then told petitioner that he had a right to state any reason in mitigation of penalties by reason of his pleas of guilty and, thereafter, according to petitioner's brief here, the court, petitioner and counsel engaged in a colloquy with respect to the sentence, after which the court sentenced petitioner to a maximum of 8 years on each of counts 1, 2 and 3 in No. 6069, and a maximum of 5 years on No. 6054, all to be served concurrently.

The sentences were set pursuant to 18 U.S.C.A. § 4208 to provide for eligibility for parole.

The following then took place:

"The Court: \* \* \* That will be the sentence of the Court. In other words, now, I am saying to you that the board of parole is going to have an opportunity to hear your case, the board of parole, as I understand, will review your case promptly and they will make studies of you and take all the advice that you can give them as to what you have done, and then they can fix the term, the minimum term upon which you may become eligible for parole. Do you understand that?

"Mr. Holt: (Shook head from side to side.)

"The Court: In other words, it's the indeterminate provision of parole. Your time in any event cannot be longer than eight years, but you can earn the right to get out under that time by showing and convincing the prison authorities and the board of parole that you have a real, sincere desire in your heart to become a—.

"Mr. Holt: (interposing) If the Court—the board of parole will give no consideration—from past experience I know this fact, *I have dealt with parole boards on five occasions.* (Italics supplied.)

"The Court: Well, this is the indeterminate sentence \* \* \* of the United States Code, and I am going to sentence you under § 4208 (a) (2), as I have said, the maximum term shall not exceed eight years. That will be the sentence of the Court. You will be returned to the custody of the United States Marshal—.

"Mr. Holt: (interposing) No, we don't have ten days, my plea is not guilty.

"The Court: Your plea of not guilty is denied.

"Mr. Holt: It is the intent of defendant, then to appeal, and the notification is a matter of record, that *certain stipulations were made.* (Italics supplied.)

"Mr. Alexander: [Government counsel.] Now, what stipulations were made? Let's have it out, what stipulations were made, Holt? I will be glad to hear your counsel, he'll tell you what happened, I know. I want it in the record, Your Honor, we don't make any stipulations.

\*   \*   \*   \*   \*   \*

"Mr. Dobbs: [Defense counsel[2]] Your Honor, I will state for the record, prior to the defendant's appearance in Court this afternoon, I had a discussion with Mr. Holt, at the suggestion of Mr. Alexander, and he had said if I thought that Melvin, at that time would care to plead, to see him for lunch. So, prior to lunch, I saw Mr. Alexander and he informed me that certain motions would be made on behalf of the Government, if we would make our motions, and that he felt that Your Honor would not impose a sentence of more than five years.

The court stated, *"It wasn't discussed with me."* (Italics supplied.) The following colloquy then occurred between the court and petitioner:

"The Court: (interposing) I am going to tell you, Mr. Holt, the reason I have imposed this sentence, if you fix—this is what we know as the indeterminate sentence.

"Mr. Holt: I realize that, Your Honor. I realize that the board of parole will review it immediately.

"The Court: They will review it within six months.

"Mr. Holt: Yes.

"The Court: And at that time they'll set a minimum date at which you can become eligible for parole.

"Mr. Holt: And in my case, my record and past experience with parole boards, I have no doubt that no consideration will be given."

Thereupon, upon motion of Mr. Alexander, a *nolle prosequi* was entered in No. 6055. See ante 1.

■ It is apparent to us that no improper means were used to induce petitioner to enter his pleas of guilty. He had the benefit of advice of counsel throughout. No one ever told him what sentence the court would impose if he entered a plea of guilty. The government counsel merely stated to petitioner's counsel that he "felt" that the court would not impose a sentence of more than 5 years. There is no indication in the record that anyone ever discussed with the court what sentence would be imposed. In fact, the judge specifically said that the matter was not discussed with him. The prosecutor stated to defendant's counsel before the plea was entered that certain motions would be made on behalf of the government, if defendant pleaded guilty. Significantly, the motion to drop the charge in No. 6055 was made as soon as the plea of guilty was entered and, furthermore, government counsel concurred in the suggestion that there was no need for a presentence investigation, thus facilitating the disposition of the matter. Furthermore government counsel made no argument for a longer sentence, expressly disclaiming any intention to make a recommendation to the court.

We are convinced that this is a case which exists simply because petitioner was disappointed with what he considered the severity of the sentence imposed. To succeed in setting the sentence aside, petitioner levels his charges against both the district judge and the government prosecutor. As we have seen, the record

---

2. Mr. Dobbs was appointed by the court on Sept. 14, 1961 on motion of attorney Hoffee, prior court-appointed counsel, who had been called to military service.

exonerates the prosecutor from any misconduct or unfair treatment of petitioner. The latter's theory is not based upon any statement by the prosecutor as to what the judge had said or what the judge would do. This is because the judge made no such statement. The prosecutor was merely expressing his own impression. And we will not countenance an oblique attack upon the integrity of a district judge, based upon such an unreal and circuitous factual approach as is inherent in the charges made by petitioner in this case.

Accordingly, we hold that the district court did not err in accepting petitioner's pleas of guilty.

■ 2. Subsequently to petitioner's arrest in 1961, government counsel filed a motion with the district court for a determination of the mental competency of petitioner to stand trial. A report by a Dr. Baumann followed. It rated petitioner a man of superior intelligence, although probably a psychopath. The judge also had the benefit of observation of the petitioner during the proceedings in his court. He ruled that the petitioner was mentally competent to stand trial. He erred insofar as he placed his ruling upon the ground that petitioner knew the difference between right and wrong. Under 18 U.S.C.A. § 4244, it was necessary that a determination be made as to whether petitioner was "so mentally incompetent as to be unable to understand the proceedings against him or properly to assist in his own defense".

■ From an unusually intensive study of the personal handiwork of what petitioner has filed before us in this case and from our necessary perusal of the verbatim report of the proceedings in the district court, we are able to apply the test of § 4244, viz., whether petitioner was so mentally incompetent as to be unable to understand the proceedings against him or properly assist in his own defense. We have done so. Unqualifiedly our conclusion is in the negative. Although the record shows petitioner has a long criminal record, it also reveals a

highly intelligent man, with a mental competency, understanding and ability sufficient to assist his court-appointed counsel in his own defense. This fact supports the ruling of the district court as to petitioner's ability to stand trial, even though the reason given by the district judge therefor was insufficient.

From a plenary review of all of the documents filed by or on behalf of petitioner in this court, we hold that the orders of the district court entered July 1, 1963 must be and are affirmed and all relief prayed of this court by petitioner is denied.

Certain orders affirmed, and certain relief denied.